TUFELE LI'A, Plaintiff

v.

JOHN MOSE and ALESENE MOSE, Defendants

High Court of American Samoa
Land and Titles Division

LT No. 31-85

June 27, 1988

Before KRUSE, Associate Justice, TAUANU'u, Chief Associate Judge, and TUIAFONO, Associate Judge.

Counsel: For Plaintiff, Roy J.D. Hall, Jr.
For Defendants, Togiola T.A. Tulafono

Plaintiff, Tufele Liamatua, is the current holder of the title "Tufele" pertaining to the village of Fitiuta, Manu'a. He claims, as successor to the title "Tufele", the trusteeship of land called "Atu'u" located in the Eastern District of Tutuila. This land was the subject of a conveyancing instrument (hereafter the "warranty

deed") entered into on November 25, 1911 between Mauga Moimoi and his wife[1] as grantors, and Tufele as "Trustee for the People of Manu'a" as grantee.

The warranty deed purports to convey a defined piece of property with the approval of the then Governor of American Samoa. It was duly accepted and registered in the Office of the Territorial Registrar. In form, therefore, the warranty deed is consistent with the requirements of the laws of the territory governing the alienation of communal lands. See A.S.C.A. §§ 37.0201 et. seq.

As trustee, plaintiff seeks the recovery or repossession of a certain part of Atu'u which is the location of a small building (said to be about half as large as the dimension of courtroom No. 5) which is claimed by defendant Mrs. Alesene Mose.

Plaintiff's intention for this site is to construct a building to house an administrative office wherein matters concerning the land may be handled and which may serve as a form of headquarters where the Manu'a District can conduct its affairs in Tutuila. Plaintiff testified at the time of the filing of his complaint that the said building had been left vacant and neglected for some two (2) years prior; and that since defendant is in possession of two (2) other double storey buildings located elsewhere on the said lands, and is earning rental revenue from business tenants, the recovery of the site in question for general district use would work no great prejudice to the defendant.

Pending trial hereon, defendant has established a sewing and laundromat business in the building.

_____

[1] Mrs. Mauga's significance as a grantor appearing in the deed is probably nothing more than naivete on the part of the draughtsman who was obviously meticulous with considering matters of dower. In custom, as well as in law since developed, a person married into a family has no say with regard to that family's lands. Dower rights are non-existent in the communal land context. A.S.C.A. § 40.0106. See also Reid v. Puailoa, 1 A.S.R.2d 85 (1983).

159

The parties have different historical perspectives on the background of the land grant.

Plaintiff testified to the effect that the warranty deed formalized a written agreement of 1904 between the then Mauga and the then Tufele whereby the former had transferred the land Atuʻu as a locality in Tutuila for the people of Manuʻa to arrive and assemble at for conferences at a territorial level. At the time of the grant, the territorial topic for discussion in Tutuila was the "Mau".

Notwithstanding the warranty deed, defendant, a long standing resident of the area Atuʻu, testified that the grant came about consequent to negotiations between Mauga and Tui Manuʻa Elisara. Accordingly it is defendant's position that the Tufele had no special say in the matter concerning the lands. As evidence hereof, the defendant alluded to prior instances when building permits and the like were executed not by a Tufele but by a succession of Manuʻa District Governors, and then later by a land committee appointed by the District Council of Manuʻa.

While we accept as fact that there was a period of time when District Governors and a land committee had executed various government permit applications with regard to land use, we are unable to accept this fact as proving defendant's contention. Rather, the more plausible explanation was given by plaintiff that the involvement of the District Governors and the land committee came into being while the Tufele title was vacant. That indeed when the present holder took the title Tufele he was ignorant of the existence of the warranty deed until the matter was raised with him by the Office of the Attorney General in 1974, and that his only prior knowledge of the matter was that the former Tufele acted as caretaker to the land when the same in earlier times housed a few people including certain government quarters. That since being apprised of the deed, plaintiff has actively assumed the functions of trustee as therein provided.

We find that the warranty deed itself is the best evidence of the conveyancing transaction between Mauga and the people of Manuʻa, and that it gives Tufele the power to act as trustee.

Defendant in addition offers alternative theories in derogation of the trust and accordingly against plaintiff's claims to trusteeship. The more extreme of these is an argument that the warranty deed itself is void because it offends the common law rule against perpetuities. It is said that the trust established by the warranty deed is perpetual in effect because it may not vest within the appropriate limitation of a life in being plus 21 years.

The logical conclusion to this argument is the destruction not only of the trust conveyance but indeed of the very estate upon which defendant's possessory rights to the land first came into being.

As it happens, we disagree with defendant. The policy reasons behind the rule against perpetuities have no relevant application to communal lands. As alluded to by defendant, the rule is grounded on public policy which disapproves the imposition of any fetters against the free alienability of estates. Nothing could be more incongruous with the notion of communal lands than a doctrine that is a product of economic policy favoring the free marketability of property. Communal lands are not freely alienable on the market. A.S.C.A. § 37.0204.

Even if the rule against perpetuities were applied, however, it would not invalidate the deed. Technically the rule is one against the remoteness of vesting of an estate or interest beyond the period of limitations settled by law. If we look to realities, the ownership of communal lands is in fact in that traditionally cognizable entity the "aiga" or extended family. See, e.g., Tuana'itau v. Pagofie, 4 A.S.R. 375, 381 (1963); Magalei v. Siufanua, 4 A.S.R. 101, 101 (1973); Fairholt v. Aulava, 1 A.S.R.2d 73, 78 (1983). The reports are also replete with cases which talk about "title" to land being acquired by Samoans through first occupancy and a claim to ownership. And it has also been early recognized that "title" may pass from one family to another through the latter's long term and adverse use. Avegalio v. Suafo'a, 1 A.S.R. 475 (1933); Ilaoa v. Toilolo, 1 A.S.R. 602 (1937). Additionally "title" may also pass through conveyance by the matai with the consent of the

family,[2] and in accordance with the requirements of certain statutory provisions.[3]

Therefore the notion of vesting of title in a communal entity has long been established law in the territory and it follows that a communal estate donated by one communal entity to another communal entity must necessarily vest immediately. To argue otherwise is to dally with artifice.

We see no legally significant distinction between a simple inter-family conveyancing, and a transaction between a single family and a group of families wherein the latter is represented by a matai appointed by the donor to assume the fiduciary role that would otherwise belong to the sa'o or senior matai of a given family. The Samoan realities remain the same, and we find no statutory or applicable common law rule to the contrary.

Defendant alternatively claims title in the land through adverse possession in excess of thirty years. We find no merit in this claim. Her coming to possession was certainly not adverse but permissive.

She claims to have lived on the land for 40 years. She descends from Manuan parents and first went upon the land in her youth and lived with relatives who also originated from Manu'a, a Leasau and his wife Toliu. After living 10 years with the latter she married John Mose whose family were also people from Manu'a and who were also living on Atu'u. After marriage she moved in with her in-laws. It was some time subsequent to this that she and her husband built the building in question. Throughout this time, defendant was familiar with the fact that land use permits were signed by third parties and indeed even she herself sought Tufele's permission on a building permit application to repair the structure in question as well as the structure belonging to Leasau and Toliu after the latter had departed the land.

---

[2] See, e.g., Satele v. Afoa, 1 A.S.R. 424 (1930), Mauga v. Soliai, 3 A.S.R. 108 (1954).

[3] A.S.C.A. §§ 37.0201 et seq.

Finally, defendant contends that the warranty deed does not provide for plaintiff Tufele's claim to be trustee. Defendant contends that the language "successors and assigns" contained in the warranty deed is restricted only to those qualified to take in the late Tufele's personal estate. We disagree. In looking to the tenor of the document there is really no intention to create some sort of individual interest that would devolve upon the late Tufele's personal estate. The whole intention of the document is to divest from Mauga the land "Atu'u" for the benefit of a group of people and nothing more. Tufele's significance reflects no more than conspicuous protocol. One ranking matai is dealing with another ranking matai on behalf of their respective communities, and this is exactly what the warranty deed reflects. The then Tufele's trust capacity reflects no more than the usual customary land setting with matai control. It is inconceivable that Mauga had any intention of possibly placing this matai control in an untitled person as defendant's interpretation of the instrument would allow. It is just as inconceivable from the grantees' point of view that their possessory rights to Atu'u under the instrument could be subject to the control of an untitled heir of the late Tufele. Defendant's suggestion just does not fit the Samoan context---even less so in 1911 when the matai influence was much more pervasive.

In our opinion, the sensible effect to be given to the purposes of the warranty deed is that successive holders of the title "Tufele" are the qualified trustees, as opposed to the lineal line of the late Tufele as suggested by defendant. (Certainly, practice did not bear out this contention in the way of exercising control over the land with land use permits.) Finally, the last paragraph of the warranty deed reads in part:

> To have and to hold.... unto the said party of the second part [Tufele], his successors or assignees, IN TRUST for the USE and BENEFIT of the People of MANU'a". (Emphasis in the original.)

There is no hint of private devolvement in this language and we believe that the draughtsman was purposeful because in contradistinction the succeeding sentence referencing a quiet enjoyment

163

covenant on the part of the grantor speaks in terms of Mauga, his wife and "their heirs".

Having thus sustained the warranty deed as evidencing the conveyancing transaction as well as being the basis for plaintiff's claims to trusteeship, we consider the issue of whether plaintiff may retake possession of the land area in question, under the circumstances.

The most glaring intent of the conveyance is that the subject land would be held for the "use and benefit of the People of Manu'a". For practical reasons, possessory rights would be subject to the physical limitations of the land area, but beyond that the rights of actual occupants found on the land are no more than those of others from Manu'a. We thus reject any suggestion of any special individual entitlement, with defendant's contention that those on the land for any given period of time have the right (or a power of appointment) to pass on their possessory rights to others of their choosing.[4] This contention is repugnant to the intent of the warranty deed and the language therein used to establish the donee class "the People of Manu'a". It is also repugnant to the very clear purpose in the warranty deed to provide for a "trustee".

---

[4] The self serving nature of this argument is best explained by the fact that the locality also contains the territory's two largest private sector employers --- the canneries. They provide a captive market with their numerous employees for a number of food and retail outlets that have spawned in the area and thus rental revenue attractive to building owners. Accordingly the more buildings that an individual can maintain on the land the better. Indeed the economics of the area have given rise to the fact that certain occupants are actually leasing building space to other Manuans themselves and the evidence also suggested to non-Manuan business tenants as well. This development is hardly consistent with the obvious intent of the deed that the land be held for the benefit and use of the Manuan community.

To the contrary we hold that the logical consequence of the natural application of the warranty deed's intent is that an occupant who voluntarily departs the land or abandons his possessory rights, does so in favor of the trustee and the People of Manu'a.[5]   Besides arriving at this conclusion through construction of the warranty deed, we find analogous precedent in the normal family land arrangements wherein the Court has held that when a family member has relinquished his possession of communal land it reverts to the matai and family. Talagu v. Te'o, 4 A.S.R. 121 (1974).   It was further held in this case that while a family member's intentions may not have been to abandon the land, the issue of whether relinquishment has arisen and the matai has effectively taken over to the exclusion of the family member is "one of fact". Id. at 125.

As noted above, plaintiff testified that the building in question had been left neglected and in disrepair for some two (2) years prior to the filing of his complaint.   He therefore approached defendant to release the site for district use.   In plaintiff's view this request was reasonable by virtue of the fact that defendant had now come into full use of another two storey building vacated by the aforementioned Leasau and Toliu; and that when this building was vacated, plaintiff had decided to convert it to district use but was beseeched by defendant to allow her to take over and remodel the building and that the first floor would be made available for district use.   Plaintiff acquiesced and by reason thereof was the subject of complaints about favoritism from other land occupants. As events turned out the first floor of this building is now occupied by a business tenant of defendant.

Since the filing of this matter, however, defendant has established a laundromat and sewing business in the building at issue.

---

[5]   This expectation is indeed borne out in actuality.   Plaintiff testified that he is continuously receiving applications from otherwise qualified individuals from Manu'a for space within Atu'u.

165

In response, defendant denies that she had ever abandoned the premises. She claims that the building was only left vacant while she was deciding what sort of business to set up therein. She formerly operated a store there but did not want to go back into that line of business because of the way competition had developed.

In the circumstances, we find relinquishment or abandonment not to be readily observable. Had defendant actually departed the land altogether then a case of abandonment might be easier made. However, on the facts as we have them it may not be said with any measure of confidence that defendant's actions or omissions are entirely inconsistent with her retaining possession of the premises and land.

On the other hand we find and uphold, in the circumstances, appropriate authority in the plaintiff Tufele to require of defendant to yield and surrender the site in question as consistent with his trust and duties reposed by the warranty deed. As we have noted, the deed's very clear purpose was to provide a land site for the "use and benefit of the People of Manu'a". Just as clear, therefore, is the scope of the trust with which Tufele is charged and that is to secure the site for this general purpose. Now it can hardly be said that the fullest expression of this purpose equates with a handful of individuals accumulating land sites for purely business purposes. While this is not to say that a business use is necessarily not a permitted use under the terms of the grant, it is hard to see how the current situation accrues to the "benefit of the People of Manu'a."

In conclusion, we find that the following circumstances have arisen: The building site in question was defendant's original business site. She subsequently came into possession of another site which located a two (2) storey structure and which has also become a leasehold business site. Subsequently she further came into possession of Leasaū and Toliu's site, which also contained another two (2) storey structure, but on the understanding given to plaintiff Tufele that the first floor thereof would be remodelled by defendant for general district use. This use did not materialize because defendant brought in another business tenant. We hold in these

circumstances that defendant's present possessory interests have exceeded the ambit of the grant and accordingly find it within plaintiff's charge under the warranty deed to demand and make available one of those business sites for general district use. The plaintiff trustee's choice of the site in question is upheld as the more reasonable and in order to mitigate any immediate prejudice to defendant by reason of having to relocate or reallocate her business interests, it is the opinion of the Court that defendant have thirty (30) days from date hereof to remove her belongings or suffer the same to be made available for general district use at the trustee's discretion.

Judgment is entered in accordance with the above findings and conclusions. It is so ORDERED.